Nos. 19-13838, 19-14874

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

United States of America,

*Plaintiff/Appellee*,

v.

Philip Esformes,

*Defendant/Appellant.*

On Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:16-cr-20549-RNS-1

**APPELLANT'S PETITION FOR REHEARING EN BANC**

James C. Martin
Kim M. Watterson
REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3546
jcmartin@reedsmith.com
kwatterson@reedsmith.com

*Counsel for Defendant-Appellant Philip Esformes*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record for Petitioner-Appellant Philip Esformes submits the following Certificate of Interested Persons and Corporate Disclosure Statement pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rules 26.1-1 and 26.1-2 of the Rules of the United States Court of Appeals for the Eleventh Circuit:

Adirhu Associates LLC

ADME Investment Partners LTD

ALF Holdings Inc.

Almovea Associates LLC

Arteaga-Gomez, Rossana

Ayintove Associates LLC

Baker Botts LLP

Barcha, Odette

Benczkowski, Brian A.

Bernstein, Daniel

Black, Roy

Boyd, Nicholas

Bradylyons, Drew

Carmouze, Arnaldo

Centers for Medicare and Medicaid Services

Christianson, Jennifer

Courtyard Manor Retirement Investors Ltd.

Courtyard Manor Retirement Living, Inc.

Daniel, Laurie Webb

Descalzo, Marissel

Do Campo, Orlando

Eden Gardens LLC

Esformes, Philip

Fair Havens Center, LLC

Ferrer, Wifredo A.

Flamingo Park Manor LLC

Goode, David

Gould, William

Grove, Daren

Hayes, James V.

Holland & Knight, LLP

Jene's Retirement Investors Ltd.

Jene's Retirement Living, Inc.

Kabirhu Associates LLC

Kuntz, Robert J.

La Hacienda Gardens LLC

Lake Erswin LLC

Lauderhill Manor LLC

Lehr, Alison Whitney

Lenard, The Hon. Joan A.

Martin, James C.

McFarlane, Ashlee

Medina, Allan J.

Meltzer, Ellen R.

Miner, Matthew S.

Morsey LC

Orshan, Ariana Fajardo

Otazo-Reyes, The Hon. Alicia M.

Pasano, Michael S.

Perczek, Jackie

Quigley, Brendan

Rabin, Samuel J.

Rainbow Retirement Investors Ltd.

Rasco, Guy A.

Reed Smith LLP

Sanders, Jeremy

Scola, The Hon. Robert N. Jr.

Sefardik Associates, LLC

Shipley, John C, Jr.

Sierra ALF Management LLC

Smachetti, Emily M.

Sombuntham, Nalina

Srebnick, Howard M.

Srebnick, Scott

Takifhu Associates LLC

Tettlebaum, Harvey M.

The Pointe Retirement Investors Ltd.

Torres, The Hon. Edwin G.

Wagner, Catherine

Watterson, Kim M.

Young, Elizabeth

The undersigned certifies that no publicly held company has an interest in the outcome of this appeal. *Signature on Next Page*.

*/s/ James C. Martin*
James C. Martin
Kim M. Watterson
REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Tel: (412) 288-3546
jcmartin@reedsmith.com
kwatterson@reedsmith.com

*Attorneys for Petitioner-Appellant*
*Philip Esformes*

## STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the Panel decision is contrary to the reasoning in the following decisions of the United States Supreme Court and this Court and that consideration by the full court is necessary to secure and maintain uniformity of decisions:

*U.S. v. Gonzalez-Lopez*, 548 U.S. 140 (2006).

*Brecht v. Abrahamson*, 507 U.S. 619 (1992).

*Young v. U.S. ex rel. Louis Vuitton et Fils, S.A.*, 481 U.S. 787 (1987).

*U.S. v. Morrison*, 449 U.S. 361 (1981).

*U.S. v. Siegelman*, 786 F.3d 1322 (11th Cir. 2015).

*U.S. v. Ballivian*, 819 F.2d 266 (11th Cir. 1987).

I express a further belief, based on a reasoned and studied professional judgment, that this Petition raises questions of exceptional importance concerning the protection of a criminal defendant's Sixth Amendment rights and the integrity and fairness of criminal prosecutions.

*/s/ James C. Martin*
*Attorney for Petitioner-Appellant*
*Phillip Esformes*

## <u>TABLE OF CONTENTS</u>

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT............................................................... i

STATEMENT OF COUNSEL ................................................... vi

I.    PRELIMINARY STATEMENT...........................................1

II.   STATEMENT OF ISSUE THAT MERITS EN BANC CONSIDERATION...........................................................2

III.  STATEMENT OF COURSE OF PROCEEDINGS AND DISPOSITION ...................................................2

IV.  STATEMENT OF FACTS NECESSARY TO ARGUMENT OF ISSUE....................................................3

V.   REASONS FOR GRANTING EN BANC REVIEW ..........................9

    A.   There Is Conflict In The Standard Governing Dismissal For Prosecutorial Misconduct ...................................................10

    B.   There Is Conflict In The Standard Governing Dismissal Where A Prosecutor's Private Interests Affects The Merits Of A Prosecution.......................................................13

    C.   There Is Conflict In The Standard Governing Dismissal When Prosecutorial Misconduct And A Prosecutor's Private Interests Infect The Fairness Of A Prosecution............17

VI.  CONCLUSION ................................................19

CERTIFICATE OF COMPLIANCE....................................................20

CERTIFICATE OF SERVICE ................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brecht v. Abrahamson,*
    507 U.S. 619 (1992) ...................................................................................17

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,*
    561 F.3d 1298 (11th Cir. 2009) ...........................................................12

*Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.,*
    983 F.3d 307 (7th Cir. 2020) ...............................................................13

*Shillinger v. Halworth,*
    70 F.3d 1132(10th Cir. 1995) ...............................................................18

*U.S. v. Brown,*
    602 F.2d 1073 (2d Cir. 1979) ...............................................................11

*U.S. v. Ballivian,*
    819 F.2d 266 (11th Cir. 1987) ...............................................................11

*U.S. v. Bowen,*
    799 F.3d 336 (5th Cir. 2015) ...............................................................18

*U.S. v. Cronic,*
    466 U.S. 648 (1984) ...............................................................................18

*U.S. v. Danielson,*
    325 F.3d 1054 (9th Cir. 2003) ...............................................................18

*U.S. v. Early,*
    746 F.2d 412 (8th Cir. 1984) ...............................................................11

*U.S. v. Gonzalez-Lopez,*
    548 U.S. 140 (2006) ...............................................................................18

*U.S. v. Hosford,*
    782 F.2d 936 (11th Cir. 1982) ...............................................................16

*U.S. v. Johnston*,
   690 F.2d 638 (7th Cir. 1982) ....................................................16, 17

*U.S. v. Melvin,*
   650 F.2d 641 (5th Cir. 1981) .....................................................8, 10

*U.S. v. Merlino*,
   595 F.2d 1016 (5th Cir. 1979) ..........................................................8

*U.S. v. Morrison*,
   449 U.S. 361 (1981)...........................................................8, 10, 13

*U.S. v. Ofshe*,
   817 F.2d 1508 (11th Cir. 1987) ...............................................7, 11, 13

*U.S. v. Ross*,
   33 F.3d 1507 (11th Cir. 1994) .......................................................18

*U.S. v. Shaygan*,
   652 F.3d 1297 (11th Cir. 2011) ....................................................8, 14

*U.S. v. Siegelman*,
   786 F.3d 1322 (11th Cir. 2015) ...................................................14, 16

*U.S. v. Spiker*,
   649 F. App'x 770 (11th Cir. 2016) ................................................14, 15

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
   481 U.S. 787 (1987)................................................................8, 15

# I.
## PRELIMINARY STATEMENT

Prosecutorial misconduct, particularly where it involves a knowing and pervasive invasion of a defendant's confidential relationship with counsel, raises fundamental concerns about prosecutorial integrity and fairness principles that must characterize our system of justice. Those integrity and fairness principles are further tested when prosecutors inject their personal interests into the prosecution, and those interests are credited by a court in denying a defendant's motions for relief on the merits in a criminal case. As the amicus brief from former high-ranking DOJ officials[1] so forcefully explains, this combination of factors—knowing and pervasive misconduct and the elevation of private prosecutorial interests to deny motions protecting a defendant's constitutional rights—puts this case in a posture where our system of justice should respond by dismissing the action. The Panel here held otherwise and review *en banc* is needed to settle the law of this Circuit on these exceptionally important issues.

---

[1] Those officials included John D. Ashcroft, Louis J. Freeh, Alberto Gonzales, Edwin Meese III, Michael B. Mukasey, David W. Ogden, Kenneth W. Starr, Larry D. Thompson, and Seth P. Waxman.

## II.
## STATEMENT OF ISSUE THAT
## MERITS *EN BANC* CONSIDERATION

Where the record shows persistent and pervasive prosecutorial misconduct and the court permitted the lead prosecutors to invoke their private interests and then weighed those interests in rejecting a defendant's merits-based motions, did the Panel err in applying an actual prejudice standard and ignoring the structural error infecting the prosecution?

## III.
## STATEMENT OF COURSE OF PROCEEDINGS
## AND DISPOSITION

Philip Esformes was arrested on July 22, 2016. The final superseding indictment charged healthcare fraud, kickback, and money laundering. DE#869. After a jury convicted him on kickback and money laundering counts (DE#1245), Mr. Esformes was sentenced to 240 months' imprisonment, followed by three years' supervised release. DE#1387. The district court also entered forfeiture and restitution judgments of $38,700,795 (DE#1455) and $5,530,207 (DE#1459), respectively. After he had served more than 53 months in prison, the President commuted Mr. Esformes' sentence, leaving the financial penalties intact. The forfeiture and restitution judgments remained intact. On appeal, this Court affirmed.

2

## IV.
## STATEMENT OF FACTS NECESSARY TO
## ARGUMENT OF ISSUE

The record reveals multiple unethical actions by the government, knowingly violating its own protocols and disregarding the defendant's attorney-client privilege—a cornerstone of his Sixth Amendment rights.

The case against Mr. Esformes began with the arrest of two of his business associates, Gabriel and Guillermo Delgado. Because Mr. Esformes had information critical to their defense, they executed a joint-defense agreement. DE#975:7-8. But after entering sealed plea agreements, the Delgados breached the JDA and, with the government's support, began secretly recording conversations with Mr. Esformes. DE#899:93-99. No court authorization was obtained for the recordings despite the government knowing Mr. Esformes was represented by counsel. DE#899:113-14. The Delgados also gave the prosecutors the office location of Mr. Esformes' in-house counsel, Norman Ginsparg. DE#933:14; DE#975:32. The government obtained a warrant to search that location, without disclosing that it housed a law office. *See* DE#933:14.

The search was noteworthy only for its unprecedented breaches of established protocols and invasion of the attorney-client privilege. On the morning of the search, Mr. Esformes' criminal defense lawyer, Marissel Descalzo, appeared and asserted

3

the privilege with respect to the seizure, as she had done previously. DE#899:108, 44-45. Nonetheless, no instructions were given on how to handle privileged documents and documents plainly marked "privileged and confidential" were not segregated. DE#899:107-08. Worse still, some agents previously involved in the investigation handled the search and remained involved in the prosecution. DE#899:67-68, 109. In all, 69 boxes containing unsegregated privileged materials were seized, reviewed and evaluated for months, including by lead prosecutor Elizabeth Young, without notifying defense counsel. DE#899:109.

The privileged materials played a meaningful role in the investigation. They included documents prepared for Attorney Descalzo by a legal assistant, Jacob Bengio, which the government used to try to get Attorney Ginsparg to "flip," notwithstanding Mr. Ginsparg's counsel having told the prosecutors that the documents were privileged. DE#899:110-11. Undeterred, the prosecutors twice questioned Mr. Bengio, asking him each time to explain the documents. Mr. Bengio's counsel also advised the government the documents were privileged at the first meeting, but the government used them anyway at both. DE#899:110-11. Ms. Young later admitted that the information obtained from Mr. Bengio's questioning aided the prosecution's case. DE#899:67-68. In fact, she even used the

4

information in preparing the government's expert who testified on the kickback claim. DE##899:85; 1413:128-1414:59.

None of this was disclosed. On the contrary, the privilege invasions only came to light when the defense asked to physically inspect the materials seized. DE#899:72-73. On review, the defense asserted a privilege over more than 750 documents. DE#899:109.

After discovering the prosecution's unethical misconduct, the defense moved to disqualify the lead prosecutors and dismiss the action. DE#275. Nine days of hearings before Magistrate Judge Otazo-Reyes were held, with testimony from the prosecution team and other fact witnesses. A 117-page Report and Recommendation followed, finding that the prosecutors knowingly infringed on Esformes' privileged communications and tried to cover that up during the hearings with a "new narrative." DE#899:110. The Magistrate Judge gave "no credibility" to the prosecutors' excuses for ignoring the timely-invoked privilege, violating the government's own protocols, and improperly using privileged materials. DE#899:67-68, 110. She called the repeated violations and "attempt to obfuscate the evidentiary record … deplorable." DE#899:114. She also found proof of prejudice. DE#899:115. Ms. Young admitted that for purposes of her investigation, it was "important or relevant" to have the Bengio analysis—created for

5

Mr. Esformes' criminal defense attorney—which she reviewed knowing it was privileged. DE#899:67-68, 85, 88, 111. The Magistrate Judge recommended prohibiting use of the privileged material at trial, but not disqualification or dismissal. DE#899:115-16.

Mr. Esformes objected to the failure to recommend dismissal or disqualification, including in light of the Magistrate Judge's credibility findings (DE#933:3), while the government objected to the credibility findings and proposed remedies (DE#931:29). At the objections hearing, Ms. Young and two other prosecutors appeared *in their individual capacities*, represented by private attorneys. They argued that the credibility findings should be overturned because, if not, they would be harmed personally—including by impeding prospective employment. DE#974:215, 231-32. The district court took these assertions to heart, expressing a "moral burden, okay, to worry about whatever ruling I make here is going to have on the career of a prosecutor." DE#974:218-19. The court asked the private attorneys what wording they wanted in the order (DE#974:217, 219, 237), and then entered an order using the language suggested (*see, e.g.*, DE#975:45-46 (substituting "misunderstandings" for "new narrative" and "attempt to obfuscate the record")).

The district court found that the government: (i) committed "multiple errors over the course of its investigation;" (ii) "infringed on Esformes's attorney-client

6

and/or work product privileges;" (iii) "failed to uphold the high standards expected from federal agents and prosecutors;" and (iv) acted with a "stubborn refusal to be sufficiently sensitive to issues impacting the attorney client privilege." DE#975:48-49. Nonetheless, it refused to order disqualification or dismissal because the government had "mooted" the prejudice by agreeing not to use the privileged documents directly at trial. DE#974:49.

The prosecutorial misconduct and injection of prosecutors' private interests played a central role in Mr. Esformes' appeal. He argued, with amicus support from former high-ranking DOJ officials, that the pervasive and knowing privilege invasions violated the Sixth Amendment and that the court's reliance on prosecutors' private interests to decide his motions to disqualify and dismiss, and then leaving them in charge of the prosecution, violated due process. Together, these unconstitutional transgressions irretrievably compromised the integrity of the prosecution and, as a result, controlling law required dismissal.

The Panel disagreed. It found that "Esformes failed to prove 'demonstrable prejudice' from the intrusion on his privilege when the suppression orders are considered, so dismissal of the indictment or disqualification of the prosecution team would have been improper." Op. 14. In requiring evidence of actual prejudice, the Panel relied on language from *U.S. v. Ofshe*, 817 F.2d 1508, 1515 (11th Cir. 1987),

indicating that "'absent demonstrable prejudice, dismissal [is] plainly inappropriate as a remedy' for the violation of attorney-client privilege." Op. 14. The Panel likewise cited *U.S. v. Merlino*, 595 F.2d 1016, 1018 (5th Cir. 1979), indicating dismissal "must depend upon a showing of actual prejudice to the accused," and obliquely referenced *U.S. v. Morrison*, 449 U.S. 361, 364-65 (1981). Op. 14-15. The Panel also rejected arguments for other standards supporting dismissal, finding them foreclosed by *Ofshe* and *U.S. v. Melvin*, 650 F.2d 641, 643 (5th Cir. 1981). Op. 15.

As for the injection of prosecutors' private interests, the Panel found that Ms. Young did not represent the government in a matter "in which [she], [her] family, or [her] business associates have any interest." Op. 17 (quoting *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803 (1987)). And, although no request for sanctions was made, the Panel held that she had the right to appear and protect her personal interest in avoiding sanction under *U.S. v. Shaygan*, 652 F.3d 1297, 1317-18 (11th Cir. 2011), which guarantees "notice and an opportunity to be heard, including the benefit of personal legal representation," before a "public[] reprimand." Op. 18. Based on that right (and without citing any other authority), the Panel held that "[a] prosecutor who exercises her constitutional right to protect

8

her professional reputation does not disqualify herself from further proceedings by that same act." Op. 18.

## V.
## REASONS FOR GRANTING *EN BANC* REVIEW

Cases involving prosecutorial misconduct are not new to this Court. But no case has involved the egregious level of attorney-client privilege invasions that occurred here. And none involved admitted and repeated breaches of the government's prosecutorial ethical standards, where that breach gave the government an unfair advantage, put a criminal defendant at a strategic disadvantage, and threatened the integrity of the prosecution itself.

This Court also has decided cases involving the private interests of prosecutors. But no case has involved the reliance on those private interests to determine issues on the merits adversely to a defendant, with those same prosecutors left to continue prosecuting the case.

In resolving the impact of this unique combination of factors on appeal, the Panel looked to this Court's existing precedents. The reality is, however, that those precedents are unsuited for a case where the misconduct is persistent and pervasive, prejudice is threatened and apparent, and the prosecution is conducted by those whose private interests were invoked to adversely determine motions seeking to protect the defendant's fundamental rights. Here, the perception of the integrity and

9

fairness of our system of justice is at stake and, as the Supreme Court has held, the law must respond to protect integrity and fairness and deter, not effectively endorse, pervasive unethical conduct.

## A.  There Is Conflict In The Standard Governing Dismissal For Prosecutorial Misconduct

Relying on *Ofshe* and *Merlino*, the Panel required a showing of actual prejudice to support a dismissal based on prosecutorial misconduct.  But insistence on actual prejudice conflicts with decisions from this Court, other Circuits, and the watershed Supreme Court decision on which *Ofshe* is based.

That watershed opinion, *Morrison*, does indeed include language indicating that an actual prejudice showing will support dismissal.  But importantly, *Morrison* did not say or hold that actual prejudice was an unwavering requirement.  *Morrison*, in fact, expressly states that dismissal also can be based on a "substantial threat" of demonstrable prejudice.  449 U.S. at 365.  Beyond that, *Morrison* noted that it was not dealing with a case of pervasive misconduct, which the Court indicated could be treated differently.  *Id*. at 366, n.2.  The Fifth Circuit's decision in *Merlino* pre-dates *Morrison*, and that Court, as a case the Panel cites elsewhere recognizes, now follows *Morrison* in holding that the substantial threat of demonstrable prejudice is sufficient.  *Melvin*, 650 F.2d at 644.

10

This Court, in turn, recognized each of these thresholds—actual prejudice, substantial threat of demonstrable prejudice, and pervasive misconduct—as an independent ground to support dismissal in its post-*Ofshe* decision, *U.S. v. Ballivian*, 819 F.2d 266, 267 (11th Cir. 1987) ("Dismissal of an indictment for governmental misconduct" is "appropriate" where there is "a demonstration of actual prejudice, or a substantial threat thereof[,] or a pattern of widespread and continuous misconduct.") (citations omitted).  In setting out the latter two grounds, this Court looked to cases from other Circuits supporting its reasoning, namely *U.S. v. Early*, 746 F.2d 412, 417 (8th Cir. 1984) and *U.S. v. Brown*, 602 F.2d 1073, 1077 (2d Cir. 1979).

Requiring actual prejudice made sense in *Ofshe*.  There, unlike here, no tainted evidence was obtained, the privilege invasion was not purposeful, and the holding thus was "based upon the unique facts of case of [the] case."  817 F.2d at 1516. *Morrison* itself was the same.  No pattern of recurring violations was involved and no privileged information was obtained.  But here, there is a deliberate invasion of the attorney-client privilege, with hundreds of privileged documents obtained and

11

used by the government in its investigation, even though it knew they were improperly seized from a law office.[2]

In this case, irrespective of any use at trial, a substantial threat of demonstrable prejudice was apparent. A lawyer armed with privileged information cannot "unlearn" it, *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1302-03 (11th Cir. 2009), and the prosecutors here are no exception. The unethical acquisition of the privileged materials gave the government an unfair advantage in building its case, refining its strategy, and anticipating Mr. Esformes' defense. *Supra* at 4-6; Amicus Br. 6, 22, 26-27. Beyond that, the misconduct reached an unprecedented level on an order of magnitude not reported in any appellate case. That conduct met any conceivable definition of pervasive that *Morrison* or *Ballivian* would envision.

This Court needs to settle the conflict in the law on prosecutorial misconduct. *Ballivian* provides three independent thresholds supporting dismissal—including the substantial threat of demonstrable prejudice and pervasive misconduct, which the

---

[2] The level of misconduct cannot be overstated. In fact, in late 2018, after the privilege violations in this case had been documented, the DOJ overhauled its taint team protocol, with the Fraud Section hiring attorneys for a new taint team. *See* https://www.justice.gov/legal-careers/job/trial-attorney-privilege-review (last visited Jan. 26, 2023). At oral argument, the government conceded that the prosecutorial misconduct was "reckless," and that new search warrant protocols had been implemented. Oral Argument Recording at 12:30-13:38 (Sept. 16, 2022).

Panel did not consider.[3]  And the need for clarity on the legal standard for dismissal based on prosecutorial misconduct is a question of exceptional importance.  As this Court recognized in *Ofshe*, protecting the attorney-client privilege is at the core of a defendant's Sixth Amendment "right to counsel and a fair trial."  817 F.2d at 1515.  Further, as the Supreme Court explained in *Morrison*, the Sixth Amendment right is "fundamental to our system of justice" and "meant to assure fairness in the adversary criminal process."  449 U.S. at 364.  The prosecutors were obligated to protect that right but knowingly refused to do so.  Review *en banc* also is needed to provide appropriate protections for this is core constitutional right.

## B.    There Is Conflict In The Standard Governing Dismissal Where A Prosecutor's Private Interests Affects The Merits Of A Prosecution

The Panel relied on *Shaygan*, *Melvin*, and *Hosford* in rejecting Mr. Esformes' arguments that the advocacy from the interested prosecutors also supported

---

[3] The Panel held that Mr. Esformes waived an actual prejudice argument by not raising it in his opening brief.  But he had no obligation to raise what he believed was an inapplicable standard.  And when the government advanced an actual prejudice standard in its response, Mr. Esformes properly met that argument in reply.  Reply 5-6.  Further, Mr. Esformes' briefs are replete with descriptions of actual prejudice and threats of actual prejudice that followed from the misconduct.  AOB 2-6, 14, 18, 21, 24, 28-33, 36-39; Reply 5-10, 13.  The issue on the appropriate standard for dismissal thus was joined by the parties and is properly presented. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 314 (7th Cir. 2020) (appellant may respond to arguments raised for first time in appellee's brief).

dismissal.  That reliance also creates a conflict in the law on a question of exceptional importance.

*Shaygan*, the Panel's principal authority, is not on point on its facts or its analysis.  That case involved the due process rights of prosecutors to appear and defend whether their unethical conduct would subject them to personal sanction. 652 F.3d at 1317-18.  No merits motion from a defendant was implicated.  Yet, the need to provide due process for prosecutors under threat of sanction is one thing; allowing *prosecutors* to appear and inject their private interests to impact a decision affecting a *defendant's* liberty interests is another.  The latter—as happened here— is not addressed by *Shaygan*, but is by the Supreme Court's decision in *Young*, and this Court's decisions in *U.S. v. Siegelman*, 786 F.3d 1322 (11th Cir. 2015), and *U.S. v. Spiker*, 649 F. App'x 770 (11th Cir. 2016).  Thus, contrary to the Panel's holding, the prosecutors' invocation of their private interests to influence the outcome of Mr. Esformes' motions puts this case on a different footing.

Mr. Esformes sought disqualification and dismissal because the lead prosecutors improperly and unethically invaded his Sixth Amendment rights.  On appeal of the Report and Recommendation, the prosecutors injected themselves into the controversy and invoked their private interests as reasons to deny the motions—

14

putting their personal interests in direct conflict with Mr. Esformes' rights.[4]  If that were not enough, the prosecutors' private interest pleas were credited by the district court and led to the denial of Mr. Esformes' motions, with the prosecutors continuing their involvement in the case.  Yet *Young*, *Siegelman*, and *Spiker* establish that this injection of private interests to influence the outcome in a criminal proceeding, while allowing them to retain control of the prosecution, is categorically forbidden, creating a structural error requiring dismissal.  The public perception of the integrity of the criminal justice system must be upheld in this instance, but the Panel took the opposite view.  *See Young*, 481 U.S. at 807-08, 810-11 ("[S]ome errors 'are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case[,]'" and "appointment of an interested prosecutor is such an error.") (citation omitted); *Spiker* 649 F. App'x at 774 ("It was plain error for [the interested prosecutor to] control [defendant's] prosecution.");

---

[4] The Panel held that this error was invited by Mr. Esformes having put the prosecutors on the stand.  But the prosecutors took the stand in front of the Magistrate Judge, not before the district court, and it is not their having testified concerning relevant circumstances that gives rise to the improper conflict.  That they chose to dissemble on the stand (as the Magistrate Judge found) is hardly Mr. Esformes fault.  On appeal, the prosecutors volitionally injected their private interests through arguments made by their private counsel, seeking to avoid potential dishonor due to their misconduct being revealed.  But no one, including Mr. Esformes, had requested sanction.  Here, it is the government, not Mr. Esformes, who provided the foundation for this structural error.

*Siegelman*, 786 F.3d at 1329 ("*Young* categorically forbids an interested person from controlling the defendant's prosecution.").[5]

Although prejudice should have played no role given the structural nature of the error, the Panel engendered further conflict with precedent when it found no prejudice because the prosecutors' advocacy did not occur at trial. But *U.S. v. Hosford*, 782 F.2d 936 (11th Cir. 1982), the decision the Panel relied on, again is inapposite. In addressing the systemic issues raised by prosecutor advocacy, *Hosford* relied on *U.S. v. Johnston*, 690 F.2d 638 (7th Cir. 1982). *Johnston*, for its part, specifically addresses whether interested prosecutor principles should be applied to a proceeding involving a judge-only adjudication and, relying on the paramount rationale for disqualifying a prosecutor-advocate—protecting the integrity of a criminal prosecution—the Seventh Circuit held that it did. *Id*. at 643-45.

Finally, apart from the conflict, the question of whether the prosecutors' injection of their private interests to determine the merits of Mr. Esformes' motions should require dismissal again is one of exceptional importance. From an

---

[5] That Ms. Young and the other prosecutors had personal counsel with them at a hearing on Mr. Esformes' motions is highly unusual, entirely inappropriate, and, as the former high-ranking DOJ officials noted, likely unconstitutional. Amicus Br. 30-31.

independent perspective, that injection, combined with the court's embrace of the prosecutors' interests, the rejection of Mr. Esformes' motions (in part) on that basis, and then leaving the prosecutors to run the case, creates an indelible and unavoidable perception of unfairness.  Case law establishes that dismissal is called for in this circumstance to protect the integrity and fairness of the prosecution, but the Panel held otherwise.  Review *en banc* should be granted to settle the prosecutorial interest standard as well.

## C.   There Is Conflict In The Standard Governing Dismissal When Prosecutorial Misconduct And A Prosecutor's Private Interests Infect The Fairness Of A Prosecution

The Panel also rejected, again relying on *Ofshe*, Mr. Esformes' and his amici's arguments for treating the prosecutorial misconduct, combined with the injection of the prosecutors' private interests, as structural error that irretrievably infected the prosecution.  But *Ofshe* does not directly address this.  And the failure to recognize this structural error conflicts with decisions from other Circuits grounded in Supreme Court precedent.

The Supreme Court has singled out a class of errors that, because they are capable of infecting the integrity of the prosecution itself, are not subject to harmless error analysis.  The distinction was made in *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1992), and recognized in cases involving Sixth Amendment violations in

17

*U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 148-151 (2006) and *U.S. v. Cronic*, 466 U.S. 648, 655-56 (1984). The Fifth Circuit extended this structural error principle to unusual cases of pervasive prosecutorial misconduct in *U.S. v. Bowen*, 799 F.3d 336, 353-55 (5th Cir. 2015). And the Ninth Circuit, in *U.S. v. Danielson*, 325 F.3d 1054, 1072 (9th Cir. 2003), and the Tenth Circuit in *Shillinger v. Halworth*, 70 F.3d 1132, 1141-43 (10th Cir. 1995), each noted that such a structural error arises because of the serious risk of injustice that "infects the trial itself" when Sixth Amendment rights are violated.

The government's invasion of Mr. Esformes' Sixth Amendment rights, when combined with the prosecutors' injection of their private interests on the merits of his motions, should trigger this established structural error analysis. This is no ordinary case. The magnitude of the invasions, the advantages gained, the judicial crediting of prosecutors' private interests, and their continuing to prosecute the case creates the very risk of injustice that perceptibly "infects the trial itself." Here, the paramount concern must be to ensure that "the integrity of the judicial system is preserved and that trials are conducted within ethical standards." *U.S. v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994). The Panel has put circuit law on a different footing, and *en banc* review is warranted for this reason also.

18

**VI.**
**CONCLUSION**

For the foregoing reasons, *en banc* review should be granted.

*/s/ James C. Martin*

James C. Martin
Kim M. Watterson
REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Tel: (412) 288-3546
jcmartin@reedsmith.com
kwatterson@reedsmith.com

*Attorneys for Petitioner-Appellant*
*Philip Esformes*

19

## CERTIFICATE OF COMPLIANCE

1.      This Petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2) and 11th Circuit Rule 35-1 because it contains 3,852 words, excluding the parts of the Petition exempted by 11th Circuit Rule 35-1.

2.      This Petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman 14-point font.

January 27, 2023

*/s/ James C. Martin*
James C. Martin

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2023, I filed a copy of the foregoing motion with the Clerk of Court using the Appellate CM/ECF system, which distributes it to all counsel of record.

*/s/ James C. Martin*

James C. Martin